```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD R. RUSCH,                )
                                )    Civil Action No. 05-0138
        Plaintiff,              )
                                )    Francis X. Caiazza
    v.                          )    U.S. Magistrate Judge
                                )
VERSAILLES BOROUGH,             )
PAUL SAXON, and                 )
FRANK BARRIERO,                 )
                                )
        Defendants              )
                                )
```

## MEMORANDUM OPINION AND ORDER

### MEMORANDUM

In this action filed pursuant to 42 U.S.C. § 1983, Donald R. Rusch alleges that his rights under the Fourth and Fourteenth Amendments of the United States Constitution and parallel provisions of the Pennsylvania State Constitution were violated during the course of an encounter with Versailles Borough ("Borough") police officers, Paul Saxon ("Saxon" or "Officer Saxon") and Frank Barriero ("Barriero" or "Officer Barriero").[1] According to Rusch, Saxon mistakenly and unreasonably identified him and the car in which he was a passenger, causing him to be subjected to an unlawful stop, search, arrest involving excessive force, detention, and criminal prosecution. Rusch also alleges liability on the part of the Borough, arguing that it failed to

---

[1] Neither officer disputes that he was acting pursuant to state law within the meaning of section 1983.

train its police force in the parameters of their constitutional authority.

The Defendants' Motion for Summary Judgement is pending. Saxon and Barriero raise the defense of qualified immunity as to all claims. The Borough contends that Rusch has not established the requisites for municipal liability under Section 1983. The Defendants' Motion will be granted in part, and denied in part.

## I. Factual Background

Many of the underlying facts - most of them critical to resolution of this motion - are disputed. The parties support their allegations primarily through reference to deposition testimony and the transcript of a criminal trial that took place in state court. The court highlights each version of events.

Following the 12:00 a.m. end of his February 8, 2003 shift as a part-time Borough patrolman, Saxon changed to street clothes, and met a friend at a bar located in the Olympia Shopping Center in Versailles. (Saxon Dep. 15). He states that he spent about an hour in the bar, and admits that he drank "a beer." Id. at 17.

According to Saxon, when the bar stopped serving food at 2:00 a.m., he and his friend left the shopping center in the friend's car, and drove to a nearby Denny's restaurant where they spent about two hours. Id. at 19. Saxon returned to his truck in the shopping center parking lot shortly after 4:00 a.m.

While he was sitting in his car waiting for it to get warm, he heard a deep muffled "boosh" and an alarm. Id. at 21. Because he couldn't identify the source of the noise, he got out of his truck, and spotted a car straddling the curb in front of the shopping center's beer distributorship. Id. at 22-23). Two men were standing near the car, one at the trunk, and one outside the driver's door. Id. From a distance of about fifty yards, Saxon saw one of the men "throw something in the trunk." Id. at 24-25 It looked like "a shadow" or a "round tubular object within three to four feet long." (Trial Tr. 55). The two men then got into the car, and pulled out of the parking lot with the headlights out. (Saxon Dep. 27).

At about the same time, Saxon saw that the distributorship door was damaged. Id. He knew that the door had been intact earlier in the evening (Trial Tr. 52), and was aware that cigarettes valued at thousands of dollars had been taken from the store in an unresolved January 2003 incident.(Saxon Dep. 31). Without drawing attention to himself, Saxon set out to follow the car, using his cell phone to alert Officer Barriero in the Versailles patrol car. Id. at 27-28. When he was unable to reach Barriero, Saxon contacted the appropriate dispatch center, describing what he had seen, and stating that the car he was following was about to enter White Oak. Id. at 33. Saxon claims that he radioed the color, make, and model number of the car to

the dispatcher.[2] Two White Oak Police cars[3] responded to the dispatcher's call, intercepting the car in which Rusch was a passenger. Id. at 34-35. Officer Barriero, in a Versailles patrol vehicle, joined the other officers after making a quick stop at the shopping center to examine the distributorship door. (Barriero Dep. 7,10)

James Shutack ("Shutack"), the owner and driver of the intercepted car, stated that shortly after the stop he was removed from the vehicle, frisked, and handcuffed by Officer Barriero. While he was still standing near the driver's side door, Shutack watched Saxon open the passenger door, place a gun to Rusch's neck or temple, and pull him out of the car as he threatened to shoot Rusch's head off if he did not cooperate. Shutack and Rusch state that Saxon was clearly inebriated, smelling of alcohol, slurring his words, and stumbling. (Rusch Dep. 71, 73)(Shutack Dep. 61, 65).

After Rusch was handcuffed, Saxon searched him. Id. According to Rusch, the search was not a simple pat-down; Saxon reached deep into his pocket to remove his wallet. (Rusch Dep. 75-76). According to Shutack, a police sergeant intervened, telling Saxon "to get in [his] truck and get the hell out of

---

[2]There is no record of the actual transmission.

[3]There is some confusion as to how many White Oak cars answered the call. Because White Oak Officers are not implicated in this suit, it is not necessary that the court attempt to resolve this confusion.

4

here." [4]

A "plain view" search of the vehicle did not reveal weapons or contraband. Police also conducted a consent search of the car. In the trunk they found pieces of string, a laundry basket, rocks, a standing car jack, and a hammer.(Doc. 26 p. 26-27). [5]

Rusch and Shutack were taken to the Versailles station by Barriero and Saxon. (Trial Tr. 79 -80) Rusch alleges that on the way, Saxon rifled through Rusch's wallet, found a card for Rusch's probation officer, and telephoned the probation officer to notify him of Rusch's arrest.[6] Id. at 83. At the station, the officers prepared an affidavit of probable cause, a criminal complaint, and an initial report.[7] Barriero typed the documents with input from Saxon. (Trial Tr. 86)(Shutack Dep. 70-72).

---

[4] Saxon testified at his deposition that he parked behind Shutack's car, and did not leave his truck until the White Oak officers walked back toward him. He stated that he approached the stopped car with them while relating the details of what he had seen and done at the shopping center. He did not participate in removing Rusch from the car, or in arresting either of the men. Although he acknowledged that he carried a weapon in the rear of his truck with the rest of his clothes and duty equipment, Saxon testified that he did not take the gun out of the truck, did not have any physical interaction with Rusch, and did not take custody of Rusch's possessions. (Saxon Dep. 35-36).

[5] The Defendants do not contest that later forensic testing failed to establish any connection between this evidence and damage done to the distributorship door.

[6] Saxon disputes this allegation, stating that he learned that Rusch was on probation for the first time following a background check conducted at the station. Saxon testified that only then did he notify Rusch's probation officer of the arrest.

[7] These documents are included in the record, but are not numerically identified.

5

Although Saxon does not remember whether he reviewed the completed documents, his signature appears on the complaint and affidavit as the assisting officer or co-affiant respectively. The complaint charged Rusch with burglary, possession of instruments of crime - a standing carjack[8], criminal mischief, and criminal conspiracy. Shutack was released later the same morning. Saxon, because he was on parole at the time of his arrest, was transported to the Allegheny County Jail where he was detained pending trial.

The trial took place on March 9, 2004 in the Court of Common Pleas. When he testified, Rusch admitted that he and Shutack had driven past the Olympia Shopping Center shortly before they were apprehended; he claimed that they were in the area because Shutack was driving him from his home in Upper St. Clair to his girlfriend's house in Wilmerding, and the shopping center was located along that route. Both men contended that as they drove past the shopping center they observed a black car speeding out of the parking lot across their lane of traffic. The car proceeded in the opposite direction, and could have carried the men seen at the beer distributorship.(Shutack Dep. 73 -75). Shutack and Rusch theorize that Saxon was sleeping in his parked truck at 4:00 a.m. because he was too impaired to drive. When he

---

[8] At the preliminary hearing the instrument of crime was re-identified as a claw hammer.

6

heard the distributorship alarm, he awoke to observe a car and two men on the shopping center curb. He attempted to follow them out of the parking lot, but because he was impaired, he mistakenly trailed Shutack's vehicle.[9]

At the close of the prosecution's case, the charges against Rusch and Shutack were dismissed for lack of evidence. This lawsuit followed.

## II. Standard of Review

In order to defeat a motion for summary judgment, the non-moving party must produce enough evidence sufficient to enable a reasonable juror to find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A motion will be granted where the materials in the record, if reduced to admissible evidence, would not satisfy the non-moving party's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. The Qualified Immunity Framework

The qualified immunity defense shields state actors

---

[9] In support of his argument, Rusch cites the affidavit of probable cause prepared by officer Barriero, allegedly with Saxon's assistance. The affidavit describes the stopped vehicle as black, of the same make and model as Shutack's. Officer Barriero states that he described the car as black based on his observation in low light at the time of the stop. Officer Saxon contends that he consistently identified the vehicle as maroon; he did not correct the color of the car in the affidavit, because he did not notice the error. It is undisputed that the car in which Rusch was a passenger was, in fact, maroon. The car is described as maroon on the arrest report but as black on the attached supplemental report.

7

performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The availability of qualified immunity claims is evaluated in a two step-process. Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). First, a court must determine whether the facts, taken in the light most favorable to the plaintiff, establish a constitutional violation. It there is no violation, the qualified immunity inquiry ends; the official is entitled to immunity. If, however, the plaintiff has established a constitutional violation, the court must determine whether that right was clearly established. If the requirements of the law would not have been clear to a reasonable officer, he is entitled to qualified immunity. Otherwise, the officer must stand trial. Id. at 136-37.

When there is a disputed question of fact "relevant to the immunity analysis," granting summary judgment in favor of the defendant on the basis of qualified immunity "will be premature." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

## IV. Constitutional Claims -Availability of Qualified Immunity

### 1. The Stop

The record is clear that the actual stop of Shutack's vehicle was effected by White Oak police officers acting without a warrant. The legality of an investigatory stop depends upon whether the officers responsible for initiating or making the stop are able to articulate a "reasonable suspicion" that a crime has been committed. This suspicion "can arise from information that is less reliable than that required to show probable cause," including an anonymous tip. Alabama v. White, 496 U.S. 325, 330 (1990). The record makes clear that Barriero did not play any role in the stop itself; he did not supply information triggering the stop, and arrived on the scene after the stop was complete. Accordingly, he is entitled to summary judgment with respect to this claim.

Saxon stands in a different position. Although he was not involved in the stop per se, it was upon his information and direction that the stop was made. Unless he had a reasonable suspicion or probable cause to believe that a crime had been committed, Saxon exceeded his authority under the Fourth Amendment. As the court will explain fully in its discussion of Rusch's arrest, outstanding issues of fact regarding the basis for Saxon's participation in the stop and the arrest make summary judgment in favor of Saxon inappropriate at this juncture.

## 2. **Search of the Vehicle**

Insofar as Rusch challenges the search of Shutack's car, the court finds that he has failed to state a constitutional claim. A passenger in a car that he neither owns nor leases lacks standing to challenge a search of the car. See <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-34 (1978)(holding that there is no legitimacy to a defendant's expectations of privacy where the area searched is in the control of a third party). "Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted." <u>Alderman v. United States</u>, 394 U.S. 165, 174,(1969).

Rusch also challenges the search of his person, arguing that Saxon transgressed the Fourth Amendment when he reached into Rusch's pocket and removed his wallet. The propriety and scope of a search incident to arrest are related to the lawfulness and circumstances of the arrest. <u>U.S. v. Myers</u>, 308 F.3d 251, 266 (3d Cir. 2002). Because outstanding issues of fact make it impossible for the court to decide the lawfulness of the arrest, summary judgment is inappropriate at this point in the proceedings.

## 3. **The Arrest**

The parties do not dispute that shortly after Shutack's vehicle was stopped, Rusch was arrested without a warrant. The Fourth Amendment mandates that warrantless arrests be supported by probable cause. If the court accepts that probable cause for

his arrest was lacking, Rusch has stated a valid constitutional claim, satisfying the first prong of the qualified immunity analysis.[10]

Probable cause exists only where "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). An officer's subjective intent is irrelevant. See Johnson v. Campbell, 332 F.3d 199, 215 (3d Cir. 2003). A finding of probable cause must be based on conclusions that would be drawn by the hypothetical "objectively reasonable police officer," taking into account his ability to draw inferences, and his professional background.[11] Grayer v. Twp. of Edison, Nos. 05-

---

[10] In his complaint Rusch also makes a claim for false imprisonment, challenging his detention pending the state criminal proceedings. The court will not discuss this claim separately. Although a "false imprisonment claim under [section 1983] is based on the Fourteenth Amendment's protection against deprivations of liberty without due process of law," Baker v. McCollan, 443 U.S. 137, 142 (1979), the imprisonment claim is derivative of the Fourth Amendment claim for arrest without probable cause. If Rusch can show that he was arrested and detained without probable cause, he will have established two separate claims under Section 1983. O'Connnor v. City of Philadelphia, No. Civ. A. 05-02879, 2006 WL 1490134 at *5 (E.D. Pa. May 26, 2006). Because the probable cause analysis is the same for each claim, the court will conduct it once, in the context of the arrest.

[11] Officers Saxon and Barriero stand in different positions with respect to the issue of probable cause. While Saxon's conduct with respect to Rusch was purportedly based on events to which he was an eyewitness, Barriero had essentially no interaction with the plaintiff at the scene, and his actions were based solely on information relayed to him by Saxon.

1623, 05-1624, 05-1994, 2006 WL 2241238 *3 (3d Cir. Aug. 1, 2006). Reasonableness must be judged from an on-scene perspective rather than from the perfect vantage of the present. Whether a person is ultimately acquitted of the crime for which he was arrested does not alter the probable cause analysis. Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005).

The concept of "probable cause" includes a degree of deference to police decisions make in the field. Qualified immunity in this context is broad enough to encompass mistaken judgments regarding probable cause, so long as those judgments are not plainly incompetent or made in knowing violation of the law. Hunter v. Bryant, 502 U.S.221, 229 (2001). The court must ask whether the objective facts available to Saxon at the time of Rusch's arrest could have led a reasonable police officer to conclude or to have made a reasonable mistake in concluding that Rusch had committed or was in the process of committing any offense that could be charged under the circumstances. Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir 1994). Resolution of this question turns, in this case, on credibility determinations and resolution of factual issues. See Wright v. Philadelphia, 409 F.3d 595,604 (3d Cir. 2005). "Depending on whether a reasonable officer believed [Rusch's] or [Saxon's] version of events, a reasonable officer could conclude either that a constitutional violation occurred or that it did not."

Reynolds v. Smythe, 418 F. Supp. 2d 724, 725 (E.D. Pa. 2006).

The many open questions of fact are "in tension" with the Supreme Court's imperative in Saucier that the availability of qualified immunity be determined at the earliest possible point in the litigation. Curley, 298 F.3d at 278. The Court of Appeals for the Third Circuit has addressed this tension: "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Id. (citing Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997)). These fact questions must be submitted to a jury. Only when the jury has completed its fact-finding can the objective overall reasonableness of an officer's actions be determined. This reasonableness determination may be left to the jury. It may also be reserved for the court. "A judge may use special interrogatories . . . to permit the jury to [find the facts] upon which the court can then determine, as a matter or law, the ultimate question of qualified immunity." Curley, 298 F.3d at 279. Here, the court will submit special interrogatories to the jury, and will base its holding with respect to qualified immunity on the jury's responses.

Officer Saxon's motion for summary judgment as to this claim

will, for now, be denied.[12]

## 2. The Use of Excessive Force

The test for evaluating a claim of excessive force is one of overall objective reasonableness judged from the perspective of a reasonable officer on the scene. Graham v. Connor, 490 U.S. 386, 395, 397 (1989) This test "requires careful attention to the facts of each case, including assessment of the severity of the crime alleged, the threat to the safety of officers or others, whether a suspect resists arrest, the duration of the action taken by the officer, whether the action takes place during the course of an arrest, the likelihood that the suspect is armed, the number of persons with whom the police officer must deal at one time, and whether physical injury is alleged. *See* Couden v. Duffy, 446 F.3d 483,496-97(3d Cir. 2006); Sharrar, 128 F.3d at 821. The calculus of reasonableness includes the fact that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly

---

[12] Given Officer Barriero's extremely limited contact with Rusch, and the presumably reliable information relayed to him by fellow officer Saxon, there is no reasonable ground upon which to conclude that Barriero's actions violated the probable cause requirement of the Fourth Amendment."When an officer has received his information from . . . an eye witness who it seems reasonable to believe is telling the truth, he has probable cause." (internal quotations omitted)) Sharrar, 128 F.2d at 818-19 (quoting Grimm v. Churchill, 932 F.2d 674, 675(7th Cir. 1991)(internal quotations omitted). Officer Barriero is, as a matter of law, entitled to qualified immunity with respect to the legality of Rusch's arrest.

evolving." Graham, at 396.

Again, the court is constrained to view the facts alleged by Rusch[13] in the light most favorable to him. Under this standard, the facts are sufficient to establish a Fourth Amendment claim for excessive force. Nothing in the record suggests that Shutack or Rusch was attempting to flee; Officer Saxon himself admits that he was able to follow their car by driving at a reasonable speed. According to his own testimony, by the time that Saxon reached Shutack's car on foot, a police presence had been established. At least two marked cars with lights activated were at the scene, multiple officers were out of their cars, and Shutack had been removed from his vehicle. The record does not reflect that officers had reason to believe that either man was armed.

The plaintiffs insist that despite the relatively controlled atmosphere, Saxon left his truck immediately after the stop and approached their car. He then opened the passenger door of the car and, with a gun to Rusch's neck, pulled him out. In profane language, Rusch was told to cooperate or suffer violent consequences. At the time, Saxon was not wearing a uniform, did not identify himself as a police officer, and was inebriated to the extent that his gait and speech were affected.

---

[13]Because Rusch does not allege that Barriero exerted any force upon him or had any role in Saxon's alleged use of force, the court limits its excessive force analysis to claims made again Saxon.

15

Because the court concludes that these allegations state a cause of action under the Fourth Amendment, the court turns next to whether that right was clearly established. As was the case with the determination of probable cause, disputed historical facts must be resolved before the court can say whether the force employed by Saxon was objectively reasonable.

Saxon and the other officers at the scene describe a scenario that differs radically from the one detailed by Rusch. Officers Barriero and Saxon testified at trial and in deposition that Saxon had no role whatever in removing Rusch from the car. They also contend that Saxon showed no signs of impairment, did not threaten Rusch, and did not brandish a gun. Saxon's impairment and his role at the scene of the arrest are indisputably related to the allegations of excessive force. A jury must address these factual issues before the court can determine "whether it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 194-95.

### 3. Malicious Prosecution

In order to prevail in a Section 1983 action malicious prosecution action, a plaintiff must show:(1)that the defendants, acting maliciously or for a purpose other than bringing the plaintiff to justice; 2)initiated a criminal proceeding; (3) without probable cause;(4) that ended in the plaintiff's favor;

and (5)that the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. DiBella v. Borough of Beachwood, 407 F.3d 599, ( 3d Cir. N.J.)2005.

The record, read in the light most favorable to Rusch, supports a claim for malicious prosecution. Yet again, however, disputed facts bear on the probable cause element of this claim, and may be relevant to the element of malice, as well, since malice may be inferred from the absence of probable cause. Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 871 (E.D. Pa. 2000). Following a jury's resolution of the outstanding fact issues, the court will assess the merits of Saxon's qualified immunity defense to the claim of malicious prosecution.[14]

---

[14] The Court of Appeals for the Third Circuit, writing in Forbes v. Twp.of Lower Merion, 313 F.3d 144, 146 (3d Cir. 2002), announced a supervisory rule applicable here. That rule requires that a district court unable to resolve the qualified immunity issue due to disputes of fact specify those facts and explain their materiality. The court identifies the issues in dispute as follows: 1)was Saxon inebriated during the hours of approximately 3:00a.m. to 5:a.m. on February 3, 2003; 2) was the car that Saxon followed the same one that he observed on the curb at the beer distributorship; 3)did Saxon participate in removing Rusch from the car; 4) was Saxon armed at any point during his interaction with Rusch; 5)whether Saxon held a gun to Saxon's head or neck; 6) did Saxon threatened Rusch; 7)did Saxon aid in preparation of the complaint, the affidavit of probable cause, or the police reports; 7) whether Saxon read the complaint, affidavit of probable cause, or the police reports; 8)whether Saxon signed the complaint, affidavit of probable cause of the police report;9) why Saxon and/or Barriero included the charge of burglary in the criminal complaint; 10)why neither acted to amend the complaint after an inspection of the distributorship door; 11) whether Rusch would have been detained pending trial regardless of the severity of the crimes charged; and 13) whether Saxon or Barriero was aware that Rusch's detention was based on the severity of the crimes charged. These factual issues are relevant to whether there was probable cause for the stop, or for

## V. <u>Liability of the Borough for Failure to Train</u>

A municipality's failure to train its employees and officers constitutes a "policy" actionable under § 1983 only where the failure demonstrates deliberate indifference to the rights of the person affected. <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir.1997). A showing of simple or even heightened negligence is not enough. <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 276 (3d. Cir. 2000). Similarly, it is not enough to show that municipal officers could have been better trained or that additional training could have reduced the overall risk of constitutional injury. *See* <u>Canty v. City of Philadelphia, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000) (citing Colburn v. Upper Darby Twp</u>., 946 F. 2d 1017, 1029-1030 (3rd Cir. 1991)).

In order to state a valid claim for municipal liability, the plaintiff is also required to "demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's failure to train and the specific deprivation of constitutional rights at issue." <u>Id.</u> at 1213 (citation omitted).

Because Rusch has failed to show establish deliberate indifference or causation, the court will grant summary judgment in favor of the Borough.

---

Rusch's arrest, whether excessive force was used during the arrest, and whether the arrest was based on mistake.

## VI. Claims Based on the Pennsylvania State Constitution

Rusch has not alleged any violation of state common law. The only claims set out in the complaint or addressed in the pleadings are those premised on the Pennsylvania State Constitution. Whether there is a right of action for money damages under the Pennsylvania Constitution has yet to be addressed by the Pennsylvania Supreme Court. Given the unsettled status of the law, the court declines to exercise supplemental jurisdiction over these claims.[15]

## VII. Conclusion

The Defendant's Motion for Summary Judgment is granted in part, and denied in part as described in the Order below.

## ORDER

**IT IS HEREBY ORDERED THAT:**

1. The **MOTION FOR SUMMARY JUDGMENT** (Doc. 24) filed by **DEFENDANT, FRANK BARRIERO,** with respect to claims alleging an unlawful vehicle stop and search, unlawful search of the Plaintiff's person, unlawful arrest, and the use of excessive force in the making of an arrest in violation of 42 U.S.C. §

---

[15] In doing so, the court joins numerous other district courts that have applied similar reasoning. *See* e.g., Klump v. Nazareth Area School Dist., 425 F. Supp. 2d 622, 641 (E.D. Pa. 2006); Laughman v. Com. of Pa., No. 1:05-CV-1033, 2006 WL 709222 at *8 (M.D. Pa. March 17, 2006)(collecting cases).

1983, is **GRANTED**. With respect to the claim for malicious prosecution in violation of 42 U.S.C. § 1983, the **MOTION FOR SUMMARY JUDGMENT IS DENIED**.

2. The **MOTION FOR SUMMARY JUDGMENT** (Doc. 24) filed by **DEFENDANT, BOROUGH OF VERSAILLES,** in response to the claim for municipal liability under 41 U.S. C. § 1983 is **GRANTED.**

3. The **MOTION FOR SUMMARY JUDGMENT** (Doc. 24) filed by **DEFENDANT PAUL SAXON** (Doc. 24), in response to the claim brought pursuant to 42 U.S.C. § 1983 alleging unlawful search of a vehicle is **GRANTED**. With respect to all other claims brought pursuant to 42 U.S.C. § 1983, the Motion is **DENIED.**

4. The court declines to exercise supplemental jurisdiction over those claims based on alleged violations of the Pennsylvania State Constitution.

    **SO ORDERED** this 15th day of September, 2006.

                                       /s/ Francis X Caiazza
                                       Francis X. Caiazza
                                       U.S. Magistrate Judge

cc:
All Counsel of Record
Via Electronic Mail